## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MARCELL HARDEN,**

     **Petitioner,**

**v.**                                **Case No. 8:17-cv-2562-T-35SPF**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

     **Respondent.**

_____/

# O R D E R

This cause is before the Court on Marcell Harden's timely-filed, counseled petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and memorandum in support (Doc. 2). Upon consideration of the petition, memorandum, the response (Doc. 6), and the reply (Doc. 8), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the Court **ORDERS** that the petition is **DENIED**:

## PROCEDURAL HISTORY

Harden entered a negotiated plea of guilty to one count of aggravated battery (great bodily harm with a firearm). (Doc. 7-1 Ex. 2; Doc. 7-2 Ex. 7 at docket p. 288) In accord with the terms of the plea agreement, Harden was sentenced to 20 years in prison. (Doc. 7-1 Ex. 3) The State waived the minimum mandatory term under Florida's "10-20-Life" law[1] and announced a *nolle prosequi* of charges Harden faced in another case. (Doc.

_____

[1] *See* § 775.087(2), Fla. Stat. (providing minimum mandatory terms of incarceration when a person actually possesses or discharges a firearm during the commission of certain offenses).

7-1 Ex. 2; Doc. 7-2 Ex. 7 at docket pp. 285, 289) Harden did not appeal his conviction and sentence.

Harden moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 7-2 Ex. 7) The Court denied the motion following an evidentiary hearing. (Doc. 7-2 Ex. 7) The state appellate court *per curiam* affirmed the denial of relief. (Doc. 7-2 Ex. 10)

## STANDARDS OF REVIEW

### I.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the

state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## II.    Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is

3

established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Harden must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Harden must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Because he pleaded guilty, Harden "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

4

## DISCUSSION

### I.      Introduction: Harden's Change of Plea

Harden entered a guilty plea on February 17, 2014. At the change of plea hearing,

the prosecutor provided the following factual basis (Doc. 7-2 Ex. 7 at docket pp. 289-91):

> On October 21st of 2012 the victim, Gary Collins, was staying in an apartment with his girlfriend, Josie Burden. Also staying in the apartment that day was the defendant's girlfriend, Charlina (Ph) White.
>
> During the course of the early morning hours the victim, Gary Collins, got into an argument with his girlfriend, Ms. Burden, and was subsequently told to pack up his stuff and leave the apartment. The defendant (sic)[2] packed up his stuff and left the apartment leaving Ms. Burden and Ms. White inside the apartment.
>
> While the defendant (sic) was gone the defendant came over to the apartment to visit his girlfriend, Charlina (Ph) White. Mr. Collins came back later that day somewhere around the noon time hour. He had called Ms. Burden and was having an argument with her by phone and also having an argument with the other occupant Charlina (Ph) White and then also with Casey Brown, another person who had come over to the apartment.
>
> During the course of having the argument with them, Mr. Collins armed himself with a rock and threw a rock into the occupied residence that was occupied by Ms. Burden, Ms. White, Ms. Brown, and the defendant. The defendant then got a firearm, came outside of the apartment as Mr. Collins was fleeing from the scene. He chased after Mr. Collins who was fleeing from the scene and was no longer doing anything directly to the residence. He then proceeded to open fire on Mr. Collins, firing at him a total of four times.
>
> One of those four shots struck Mr. Collins from the rear. It hit the rear of his right arm, passed completely through his arm and created an exit and entry wound in his right arm. That injury subsequently caused a permanent injury to Mr. Collins whereby he's lost feeling in his arms and has lost the use of two of the digits of his right hand. The defendant then fled the scene. Law enforcement responded to the scene.
>
> During the course of canvasing the area they found a witness, Ms. Holder, Chalandra (Ph) Holder, who identified the defendant as the one she saw

---

[2] The original transcript twice states "defendant (sic)", apparently to notate misstatements by the prosecutor while orally presenting the factual basis. Taken in context, the prosecutor's statements indicate that he meant to refer to Collins, the victim.

shooting and clearly identified him as chasing the victim and shooting at the victim as the victim was running away from him. The defendant was taken into custody and subsequently interviewed.

Post-Miranda, the defendant admitted to shooting at Mr. Collins. He also informed law enforcement where he had hidden the gun, which was hidden inside a tree. He provided the exact location of the firearm, at which time the firearm was retrieved and confirmed to be a firearm. All of this occurred in Hillsborough County. Defendant can be identified.

Harden did not object to the factual basis. The Court conducted a colloquy with

Harden about his decision to plead guilty (Doc. 7-2, Ex. 7, docket pp. 286-89):

THE COURT: [ ] The first thing that I will need to do, Mr. Harden, is swear you in. So if I could have you raise your right hand. Do you swear or affirm any testimony that you may give in this proceeding will be the truth, the whole truth, and nothing but the truth?

MR. HARDEN: Yes.

THE COURT: All right. Put your hand down, sir. I have this paperwork that is titled "Uniform plea acknowledgment and waiver of rights form." Did you have the opportunity to go over this document with your attorney [ ]?

MR. HARDEN: Yeah.

THE COURT: Is this your signature on the back of this form?

MR. HARDEN: Yes.

THE COURT: Did you understand everything in this plea agreement?

MR. HARDEN: Yes.

THE COURT: Do you have any questions of the Court at this time?

MR. HARDEN: No.

THE COURT: Are you satisfied with the services of your attorney?

MR. HARDEN: Yes.

THE COURT: Was there anything else you wanted your attorney to do on your behalf before entering into this plea?

MR. HARDEN: No.

THE COURT: Are you under the influence of any drugs, alcohol, or prescription medications?

MR. HARDEN: No.

. . .

THE COURT: All right. Mr. Harden, the charge is aggravated battery, great bodily harm. It carries with it - - it is a first-degree felony with a maximum penalty of up to 30 years in Florida State Prison. How do you wish to plead to this charge, sir?

MR. HARDEN: Guilty.

THE COURT: Has anybody forced you or threatened you in any way to plead guilty?

MR. HARDEN: No.

THE COURT: State, I do need a factual basis.

[STATE]: All right. And just for the record, Your Honor, it's aggravated battery, great bodily harm with a firearm.

THE COURT: Okay. I apologize. Does that change anything, Mr. Harden? I left off the firearm. The charge is aggravated battery, great bodily harm with a firearm. Is it your intention to plead guilty to that charge, sir?

MR. HARDEN: Yes.

THE COURT: Has anybody forced you or threatened you in any way to plead guilty?

MR. HARDEN: No.

THE COURT: All right. State, with the factual basis what the State is also waiving, if you can put that on the record.

STATE: State's waiving the minimum mandatories for possession discharge and great bodily harm. Basically, the "10-20-Life" enhancements.

After receiving the factual basis, the court accepted Harden's plea. The court found

that Harden entered the plea freely and voluntarily. (Doc. 7-2 Ex. 7 at docket p. 291)

The record supports the conclusion that Harden knowingly and voluntarily entered his plea. The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

When he entered his guilty plea, Harden stated that he intended to plead guilty to the offense of aggravated battery, great bodily harm with a firearm; that he was not forced or threatened; that he was satisfied with his attorney; and that there was nothing else he wanted his attorney to do. Further, the prosecutor stated at the change of plea hearing that the State agreed not pursue charges in another case in exchange for Harden's plea and also agreed to waive the 10-20-Life minimum mandatory term. (Doc. 7-2 Ex. 2 at docket p. 285)

Moreover, Harden told the court that he understood the change of plea form that he signed. The form provides that the parties agreed on a sentence of 20 years and the maximum possible sentence was 30 years. (Doc. 7-1 Ex. 2) Thus, entry of the plea secured an agreement by the State not to pursue the maximum possible sentence. The form also states that Harden understood he was giving up his rights to a jury trial; to compel the attendance of witnesses on his behalf; to confront and cross-examine the State's witnesses; to remain silent; and to testify on his own behalf. (Doc. 7-1 Ex. 2) Harden's statements at the change of plea hearing carry a strong presumption of verity.

8

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). The record reflects that Harden's plea was knowing and voluntary.

## II.    Ground One

In his sole claim for relief, Harden contends that trial counsel was ineffective in not filing a pre-trial motion to dismiss the charge based on Florida's "Stand Your Ground" law.[3] A criminal defendant may raise a Stand Your Ground defense through a pre-trial motion to dismiss. *Dennis v. State*, 51 So.3d 456 (Fla. 2010).

The Court concludes that Harden waived this claim by entering his plea. Since a guilty plea waives non-jurisdictional defects, a petitioner who enters a plea can only challenge the knowing and voluntary nature of the plea. Entry of a plea, therefore, precludes most challenges to the conviction. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (holding that, after a criminal defendant enters a guilty plea, he "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within" the range of competence for criminal attorneys); *see also United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of

---

[3] *See, e.g., Little v. State*, 111 So.3d 214, 219-22 (Fla. 2d DCA 2013) (explaining that the "Stand Your Ground" law, which grants immunity from prosecution to persons who lawfully use deadly force in self-defense, expanded the circumstances under which the use of deadly force is justified and eliminated a duty to retreat before using deadly force in certain circumstances).

guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").

In asserting that his claim is not waived, Harden cites *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983), for the proposition that a "guilty plea cannot have been knowing and voluntary . . . if a defendant does not receive reasonably effective assistance of counsel in connection with the decision to plead guilty, because the plea does not then represent an informed choice." However, Harden does not allege that counsel's failure to file the motion to dismiss involved mis-advice about the plea, affected his decision to enter the plea, or otherwise impacted the knowing and voluntary nature of the plea. Because Harden's claim about counsel's pre-plea omission does not implicate the validity of the guilty plea, the Court finds that Harden waived this ineffective assistance of counsel claim when he entered his plea.

Alternatively, even assuming that the claim is not waived, Harden has not met his burden under the AEDPA of showing that the state court unreasonably denied his ineffective assistance claim. The state postconviction court conducted an evidentiary hearing. Harden testified that Collins threw a brick through the apartment window. (Doc. 7-2 Ex. 7 at docket p. 188) Harden stated that when he saw Collins running towards the apartment's back door and reaching in his pants as if he had a weapon, Harden shot Collins. (Doc. 7-2 Ex. 7 docket pp. 189-90) Harden testified that he believed Collins was going to harm him or others in the apartment. (Doc. 7-2 Ex. 7 at docket p. 190) Harden testified that he relayed this information to counsel, and that counsel told him about a Stand Your Ground defense. (Doc. 7-2 Ex. 7 at docket p. 190)

Counsel testified that he believed it "strategically unwise" to file a motion to dismiss based on Stand Your Ground. (Doc. 7-2 Ex. 7 at docket p. 226) Counsel testified that he

did not believe a motion to dismiss would have succeeded because of the State's independent witness who would have offered a version of events inconsistent with Harden's version. (Doc. 7-2 Ex. 7 at docket pp. 229-30) Specifically, counsel testified, this independent witness could say that she saw Harden chasing after and shooting at the victim "in broad daylight" as the victim ran down the street. (Doc. 7-2 Ex. 7 at docket pp. 46, 50-51)[4] Thus, Counsel also testified that he wanted to avoid exposing Harden to cross-examination at a motion hearing. He believed that Harden's testimony could potentially benefit the State and allow the State to prepare to impeach or rebut Harden's testimony at a trial. (Doc. 7-2 Ex. 7 at docket p. 228) Counsel explained that he did not want to "show the State [his] cards." (Doc. 7-2 Ex. 7 at docket p. 229)

Counsel also stated that Harden agreed not to file the motion to dismiss because Harden did not want the State to compel the independent witness's presence at a motion hearing. (Doc. 7-2 Ex. 7 at docket p. 230) Counsel explained that Harden was hopeful that the independent witness would not participate, even though counsel was confident the State would have compelled her attendance and therefore advised Harden not to count on the witness's not appearing in this case. (Doc. 7-2 Ex. 7 at docket pp. 230, 243) Accordingly, counsel testified, he and Harden agreed to raise self-defense and defense of others as an affirmative defense at trial. (Doc. 7-2 Ex. 7 at docket pp. 230-31)

The state court denied Harden's ineffective assistance claim (Doc. 7-2 Ex. 7 at docket p. 105):

> After reviewing the allegations, the testimony, evidence, and arguments presented at the June 9, 2015, evidentiary hearing, the court file, and the record, the Court finds [counsel's] testimony to be more credible than that of Defendant. Therefore, the Court finds [counsel] did not want to file a

---

[4] Further, as addressed at the change of plea hearing, additional evidence might have been elicited that Harden hid the firearm in a tree, conduct inconsistent with an innocent conscience.

motion to dismiss because it would have required Defendant to testify and be subject to cross-examination under oath. The Court finds the Defendant agreed not to file the motion to dismiss because he did not want [counsel] to force the State's independent eyewitness to show up and they were banking on this independent eyewitness not showing up for trial. Consequently, the Court finds Defendant failed to prove that [counsel] acted deficiently or any resulting prejudice when [counsel] made a sound, reasonable, strategic decision not to file the motion to dismiss based on the stand your ground defense and Defendant agreed. As such, no relief is warranted upon claim six.

Harden does not show that the state court's decision was unreasonable. Harden does not overcome, by clear and convincing evidence, the presumption of correctness afforded to the state court's factual finding that counsel's testimony was credible. "The factual findings of the state court, including the credibility findings, are presumed to be correct unless [a petitioner] rebuts the presumption by clear and convincing evidence." *Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) (citing 28 U.S.C. § 2254(e)(1)); *see also Consalvo v. Sec'y, Dep't of Corr.* 664 F.3d 842, 845 (11th Cir. 2011) ("Federal courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them. We consider questions about the credibility and demeanor of a witness to be questions of fact.") (internal quotation marks and citations omitted).

Similarly, the state court's finding that counsel's decision not to file the motion was strategic is a factual finding entitled to a presumption of correctness. *See DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) (stating that a question "regarding whether an attorney's decision is 'strategic' or 'tactical' is a question of fact."). Harden has not overcome, by clear and convincing evidence, the presumption of correctness attached to this factual finding.

12

Harden fails to establish that counsel's strategic decision not to file the motion to dismiss was so "patently unreasonable" as to amount to ineffective assistance. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983))); *see also Chandler v. United States*, 218 F.3d 1305, 1314-15 (11th Cir. 2000) ("[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy. . . . [B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.") (internal quotation marks and citation omitted).

Counsel stated that Harden most likely would have testified at any motion to dismiss hearing.[5] Counsel explained that he believed the State could have used Harden's hearing testimony to develop a response to the theory of defense in preparation for trial. As counsel's evidentiary hearing testimony further suggests, if the motion to dismiss failed, Harden's hearing testimony might have been used against him at trial. *See Cruz v. State*, 189 So.3d 822, 827-29 (Fla. 4th DCA 2015) (holding that the trial court did not err in allowing admission of a defendant's statements at a Stand Your Ground hearing as substantive evidence at trial because the defendant "was not required to surrender any constitutional right by voluntarily testifying in the pre-trial Stand Your Ground immunity

---

[5] *See, e.g., Dennis*, 51 So.3d 456 (approving a procedure in which a person alleging Stand Your Ground immunity in a pre-trial motion to dismiss is entitled to an evidentiary hearing at which he or she must prove the facts giving rise to the claimed immunity by a preponderance of the evidence).

13

hearing." (citing *State v. Palmore*, 510 So.2d 1152 (Fla. 3d DCA 1987))). Harden has not established that counsel made a patently unreasonable strategic decision not to file a motion to dismiss that counsel believed had little chance of success when the State potentially could have used Harden's hearing testimony to its advantage in preparation for and during a trial. Harden therefore fails to demonstrate that the state court unreasonably applied *Strickland*[6] or unreasonably determined the facts in rejecting his claim.

Finally, the Court notes that Harden relies on a state case in which counsel was found ineffective for not filing a pre-trial Stand Your Ground motion to dismiss. The state appellate court remanded the postconviction court's summary grant of relief for an evidentiary hearing on the question of whether counsel's failure to file the motion amounted to deficient performance. *State v. Williams* (*Williams I*), 127 So.3d 890 (Fla. 1st DCA 2013). Harden states that, upon remand, the state postconviction court again found counsel ineffective, concluding that counsel did not make a reasonable strategic decision in "failing to file a winnable motion to dismiss that would render one immune to prosecution, in order to preserve the element of surprise in the hope of receiving a not-guilty verdict[.]" (*See* Doc. 2 at 13). The state appellate court *per curiam* affirmed the order granting relief. *State v. Williams* (*Williams II*), 216 So.3d 636 (Fla. 1st DCA 2015).

These state decisions do not change the Court's conclusion that Harden has not met his burden under the AEDPA. Neither *Williams I* nor *Williams II* is "clearly established

---

[6] Harden argues that this Court need not defer to the state court's conclusion that counsel's strategic choice was reasonable. In support, Harden cites *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991) ("[W]hether [counsel's] tactic was reasonable is a question of law, and we owe neither the district court nor the state court any deference on this point."). However, *Horton* was issued before the enactment of the AEDPA. As addressed, a federal habeas court's review of an ineffective assistance of counsel claim under the AEDPA standard must be "doubly" deferential to the decisions of both counsel and the state courts.

federal law", which encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412. Additionally, the state decisions involved a unique and distinguishable situation. There, the petitioner's convictions for murder and aggravated battery stemmed from the same incident. *Williams I*, 127 So.3d at 891.

The aggravated battery conviction was affirmed but the murder conviction was reversed on appeal for a new trial because of an error in the jury instructions. *Id.* On remand, counsel successfully moved to dismiss the murder charge based on Stand Your Ground. *Id.* at 891-92. The petitioner still stood convicted of aggravated battery, however. With the knowledge that the Stand Your Ground motion to dismiss was successful on remand of the murder charge, the petitioner contended that counsel should have filed the motion to dismiss before trial, when it would have resulted in the dismissal of both charges. The state postconviction court agreed that counsel was ineffective in not filing this "winnable" motion to dismiss before trial. *Id.* at 893; *see* Doc. 2 at 13.

Harden's case is factually dissimilar, and unlike the petitioner in *Williams*, he cannot point to any determination by the state courts that relief would have been warranted on this state law matter. Moreover, the testimony that the state court accepted in denying Harden's claim shows that counsel evaluated the likelihood of success and, in making a strategic decision not to file the motion, concluded that the motion was likely to fail. *See, e.g., Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"). Accordingly, Harden is not entitled to relief on Ground One.

It is therefore **ORDERED** that Harden's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Harden and to **CLOSE** this case.

## <u>CERTIFICATE OF APPEALABILITY</u>
## <u>AND</u>
## <u>LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>

**IT IS FURTHER ORDERED** that Harden is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. Section 2253(c)(2) limits the issuing of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Harden must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to make this showing, Harden is not entitled to a certificate of appealability. Therefore, he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Harden must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on this 24th day of September, 2020.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE